# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : CASE NO.: 1:11-CR-27 (WLS) |
| DONTREAL M. JENKINS and TREVAYNE D. JONES, | : |
| Defendants. | : |

## ORDER

Before the Court are Defendants Dontreal M. Jenkins' and Trevayne D. Jones' Federal Rule of Criminal Procedure 29 Motions for Judgment of Acquittal. For the following reasons, Defendants' Motions for Judgment of Acquittal are **DENIED**.

## PROCEDURAL HISTORY

Defendants Dontreal M. Jenkins and Trevayne D. Jones were tried before a jury in January 2013 on a ten-count Indictment charging as follows: Defendant Jones was charged with Conspiracy to Embezzle Public Monies in violation of 18 U.S.C. §§ 641 and 371 (Count I), Embezzlement of Government Property in violation of 18 U.S.C. § 641 (Count II), Aggravated Identity Thief in violation of 18 U.S.C. § 1028A (Count III), Misleading Statements in violation of 18 U.S.C. § 1512(b)(3) (Count IX), and one count of Mail and Wire Fraud Conspiracy in violation of 18 U.S.C. §§ 1341, 1343 and 1349 (Count X); and Defendant Jenkins was charged with Conspiracy to Embezzle Public Monies in violation of 18 U.S.C. §§ 641 and 371 (Count I), Embezzlement of Government Property in violation of 18 U.S.C. § 641 (Count IV), Aggravated Identity Thief in

1

violation of 18 U.S.C. § 1028A (Count V), and Mail and Wire Fraud Conspiracy in violation of 18 U.S.C. §§ 1341, 1343 and 1349 (Count X).

On January 11, 2013, the jury returned a verdict of Guilty as to Counts I, IV, V, and X as to Defendant Jenkins and Counts I, II, III, and IX as to Defendant Jones. The jury found Defendant Jones Not Guilty on Count X.

On January 11, 2013, the Government announced it was resting its case against Defendant. Following excusal of the jury from the courtroom, counsel for both Defendants orally entered a motion for judgment of acquittal on all counts pursuant to Federal Rule of Criminal Procedure 29. After hearing argument from both sides, the Court announced that it would reserve a decision on the motion and proceed with the trial pursuant to Rule 29(b). The Court noted that it was obligated to rule on Defendants' Rule 29 motion on the basis of the evidence as it stood at the time the ruling was reserved. Following the Court's Rule 29(b) reservation of its decision, Defendants presented their defense. The jury delivered its verdict on January 11, 2013.

Pursuant to an order from the Court (Doc. 156), Defendants and the Government submitted written briefs regarding Defendants' respective Rule 29 motions. (Docs. 160, 165, 166). The Court also heard oral argument on the motions. (Doc. 176.) Defendants' motions being fully briefed, they are now ripe for ruling.

## DISCUSSION

I. **Defendants' Rule 29 Motions**

   A. **Rule 29 Standard**

Under Federal Rule of Criminal Procedure 29, a defendant's motion for judgment of acquittal should be granted if the Court finds that "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Thus, the Court "must determine whether

2

a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008) (citing *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999)). The conviction must be upheld unless the Court finds that "the jury could not have found the defendant guilty under any reasonable construction of the evidence." *United States v. Robles*, 283 F. App'x 726, 735 (11th Cir. 2008) (quoting *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999)).

In construing the evidence, the Court must take the evidence in the light most favorable to the Government. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (citing *United States v. Futrell*, 209 F.3d 1286, 1288 (11th Cir. 2000)). Accordingly, the Court must "resolve any conflicts in favor of the Government, draw all reasonable inferences that tend to support the prosecution's case, and assume that the jury made all credibility choices in support of the verdict." *Id.* (citing *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006); *Ward*, 197 F.3d at 1079 (11th Cir. 1999)). "The prosecution need not rebut all reasonable hypotheses other than guilt." *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir. 1989). Thus, "[i]t is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006) (citing *United States v. Mieres-Borges*, 919 F.2d 652, 656 (11th Cir. 1990)).

If, as it did here, the Court reserves decision on the motion made at the close of the Government's evidence then the Court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

3

### B. Rule 29 Argument and Analysis

Defendant Jones files his motion for judgment of acquittal as to Count I—Conspiracy to Embezzle Public Monies and Count III—Aggravated Identity Theft. Defendant Jones initially moved for judgment of acquittal as to Counts I, III, and X; however, because the jury found Defendant Jones Not Guilty as to Count X—Mail and Wire Fraud Conspiracy, only Counts I and III will be discussed herein.

Defendant Jenkins joins Defendant Jones' arguments as to the Conspiracy to Embezzle Public Monies and Aggravated Identity Theft counts but also challenges his conviction for Mail and Wire Fraud Conspiracy.

#### a. *Conspiracy to Embezzle Public Monies (Count I)*

In the superseding indictment, the Government alleged that Defendants Jones and Jenkins, along with Jamal Williams, did combine, conspire, confederate, agree, and have a tacit understanding with one another and with others known and unknown to the grand jury to knowingly embezzle, steal, purloin, and convert to their own use 342 stolen U.S. treasury checks worth approximately $713,000 in violation of 18 U.S.C. § 641, i/c/w 371. Defendants Jones and Jenkins both contend that the Government failed to prove beyond a reasonable doubt that they knew the conspiracy existed and were aware of its overall scheme. Specifically, Defendants allege that the Government failed to produce evidence showing that Defendants had any knowledge of any check transactions taking place outside of the Albany area. Defendants contend that failure to show that Defendants knew of the check-cashing activities in Atlanta and other areas shows that the government's proof is that of multiple conspiracies connected to Debra Echols, rather than one conspiracy. (Doc. 160 at 2-4; Doc. 165 at 2-6) (citing *United States v. Chandler*, 388 F.3d 796 (11th Cir. 2004)). To this end, the Defendants allege

4

that the conspiracy shown at trial resembles a "rimless wheel" or "hub-and-spoke" conspiracy. *Chandler*, 388 F.3d at 807-808.

In the Superseding Indictment, the Government alleged that Defendants Jones and Jenkins did conspire to knowingly embezzle, steal, purloin, and convert to their own use and the of another, and without authority to convey and dispose of, 342 stolen United States Treasury checks by presenting the same for cashing at a BP station on Slappey Boulevard in Albany, Georgia. (Doc. 55 at 1-3.) "To support a conviction of conspiracy, the government must prove 1) that an agreement existed between two or more persons to commit a crime and 2) that the defendants knowingly and voluntarily joined or participated in the conspiracy." *United States v. Seher*, 562 F.3d 1344, 1364 (11th Cir. 2009) (citations omitted). "To support a conviction under 18 U.S.C. § 641 for theft of government money, the government must prove that (1) the money described in the indictment belonged to the United States or an agency thereof, (2) the defendant stole or converted the property to her own use, and (3) the defendant did so knowingly with the intent to deprive the government of the money." *United States v. Fields*, 327 F. App'x 133, 134 (11th Cir. 2009) (citations omitted).

The Court finds that evidence was presented at trial from which a jury could have determined beyond a reasonable doubt that Defendants were guilty of a single conspiracy to violate section 641, as alleged in the Superseding Indictment, rather than the multiple conspiracies alleged by Defendants. At trial, Mr. Patel, the owner of the BP station, testified that he cashed in excess of three hundred US Treasury checks for Defendants Jones and Jenkins. Testimony from Williams indicated that Debra Echols, a United States Postal Service employee in Atlanta, was the source of the checks. Echols would provide the checks upon request to Williams, who would then transport the

5

checks to Defendants Jenkins and Jones. Defendants Jones and Jenkins would present the checks for cashing to Mr. Patel, informing him that the checks were from Defendant Jones's sister's tax business in Atlanta. Based on this information alone, a reasonable juror could have found beyond a reasonable doubt that both Defendants were aware of and did knowingly participate in Echols' scheme to steal US Treasury checks from a post office in Atlanta and distribute them to individuals for cashing in other geographic areas, including Albany, Georgia. The Superseding Indictment charged a single conspiracy involving over three hundred checks transported and cashed in Albany, Georgia. The Court finds that the testimony from Mr. Patel and Williams provided proof sufficient to sustain the jury's conviction for a single conspiracy to violate 18 U.S.C. § 641.[1]

Accordingly, Defendants' Motions for Judgment of Acquittal as to Count I of the Indictment (Doc. 55) are **DENIED.**

### b. *Aggravated Identity Theft (Counts III & V)*

Defendants were also both found guilty of Aggravated Identity Theft. The Superseding Indictment charged that Defendant Jones did knowingly possess and use, without lawful authority, a means of identification of another person, to wit, the name and signature of the intended payee on a US Treasury check, Anthony P., check #2221 97009445, in the amount of $26,195, in violation of 18 U.S.C. §§ 1028(a) and 2. It also

---

[1] In terms of the Count I (Conspiracy to Embezzle Public Monies), the Court declines to substantively address Defendants' arguments under *Chandler* regarding the "hub and spoke" conspiracies and "rimless wheels" because the Court finds these models to be irrelevant. The Government's proof at trial involved only the three hundred plus checks cashed at Mr. Patel's BP station in Albany, Georgia. Though Williams testified that he only made about three to four trips to Albany with approximately 40 checks, the jury was entitled to credit Mr. Patel's testimony that he cashed over three hundred checks for Defendants Jones and Jenkins. Just because Williams was the only intermediary to testify at trial, this does not mean that the jury could not have found that Defendants Jones and Jenkins received the remainder of the three hundred checks from elsewhere. Thus, this is not a situation where the proof at trial involved other conspiracies that did not involve the named Defendants; rather, the Government focused its proof on the checks that Defendants themselves were alleged to have cashed.

charged that Defendant Jenkins did knowingly possess and use, without lawful authority, a means of identification of another person, to wit, the name and signature of the intended payee on a US Treasury check, check #2310 65041674, payable to A.C.V. in the amount of $3,510, in violation of 18 U.S.C. §§ 1028(a) and 2.

An individual is guilty of aggravated identity theft under § 1028A if they knowingly transfer, possess, or use, without lawful authority, a means of identification of another person. Section 1028A has been interpreted to require that the Government show that the defendant knew that the means of identification at issue belonged to another person. *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009).

Defendants argue that, although the Government presented evidence to show that the individuals named on the US Treasury checks negotiated were indeed real people and that the checks themselves were authentic, the Government failed to prove that Defendants had the requisite knowledge that the checks were authentic or that the names and signatures listed on the checks belonged to actual real persons *at the time the checks were negotiated*. In support of this contention, Defendants note that none of the victims testified that they knew Defendants, had seen Defendants, or had any reason to believe that Defendants knew who they were.

 In opposition to Defendants' motions, the Government argues that it can be inferred from the circumstances of the check-cashing transactions that Defendants had knowledge that the checks in question were authentic and the names assigned to them those of real people. Per the Government, Defendants were able to cash numerous treasury checks during the course of the conspiracy and none of the checks came back counterfeit. The Government also notes that testimony was proffered at trial to show that Defendants knew that the checks were received from an employee of the United

7

States Postal Service, Debra Echols. According to the Government, a jury could infer that the IRS does not issue three hundred treasury checks to fictitious people.

The Court agrees with the Government that the jury was permitted to infer from the circumstances of the transactions that Defendants had knowledge that the checks were authentic and belonged to actual individuals. In *United States v. Holmes*, 595 F.3d 1255 (11th Cir. 2010), *cert denied*, 131 S. Ct. 1546 (2011), the Eleventh Circuit established "that the government can rely on circumstantial evidence about an offender's misuse of a victim's identity to prove the offender knew the identity belonged to a real person." *United States v. Gomez-Castro*, 605 F.3d 1245, 1249 (11th Cir. 2010) (clarifying *Holmes'* position on circumstantial evidence to satisfy the proof requirement). Defendants argue that *Holmes* is distinguishable because, in that case, the Court found the offender's *repeated* use of *one person's* identity to be sufficient to support the jury's conclusion that the defendant knew the identity belonged to a real and actual person. (Doc. 160 at 7; Doc. 165 at 9.)

The Court finds that Defendants read *Holmes* too narrowly. *Holmes* does not establish that repeated use is the *only* way to supply the circumstantial evidence needed to sustain a conviction of aggravated identity theft; *Holmes* and its progeny, *Gomez-Castro*, also stand for the proposition that an offender's knowledge of government verification processes, knowledge that need not be proven but "can be inferred reasonably based on ordinary human experience for which no special proof is required," can also give insight into the offender's knowledge about the identity of the individual, and therefore sustain a jury verdict. *See Gomez-Castro*, 605 F.3d at 1249 (citing *Holmes*, 595 F.3d at 1258).

8

Here, evidence was presented to show that roughly three hundred US Treasury checks were cashed during the course of the conspiracy. Benjamin Franklin once said, "[i]n this world nothing can be said to be certain, except death and taxes." Even if an individual does not receive a tax refund, the average American is intimately acquainted with paying taxes and the filing process. As such, the jury could have inferred, relying on their "own judgment" and "apply[ing] their own knowledge and experience," that Defendants knew that the IRS only issues a refund check after receipt, verification and acceptance of a tax return of an actual individual who is identifiable by his/her unique social security number. *Gomez-Castro*, 605 F.3d at 1249 ("[T]he jury [can] very properly exercise their own judgment and apply their own knowledge and experience in regard to the general subject of inquiry.") (quoting *Head v. Hargrave*, 105 U.S. 45, 51 (1882))); *see also United States v. Philidor*, Nos. 12-13679, 12-3724, 2013 WL 2321689 (11th Cir. 2013) (noting that it can be inferred, "based on common sense and ordinary human experience, that the Internal Revenue Service verifies identifying information, like Social Security numbers, before issuing a tax refund"); *United States v. Benson*, 443 F. App'x 420, 425 (11th Cir. 2011) ("[T]he jury certainly could have inferred that "based on ordinary human experience for which no special proof is required[,]" the Defendant knew that the state government would verify the name and social security number of an individual before accepting a return and also before issuing a tax refund check.") (citing *Gomez-Castro*, 605 F.3d at 1249). Thus, even in the absence of direct evidence demonstrating Defendants knew that they were cashing the checks of actual individuals, a reasonable juror could have relied on his/her own knowledge of how tax refunds are generated to conclude beyond a reasonable doubt that 1) Defendants knew that the IRS only issues tax refunds to real people after verifying the individual's identifying

9

information and 2) Defendants knew that the repeated successful negotiations of these treasury checks, all received from the same reliable source (a US Postal Service employee), signified that the checks were authentic and connected to actual refunds issued to actual individuals.

Stated in other words, Defendants did not have to negotiate checks on behalf of the same individual repeatedly to create a reasonable inference in the minds of the jurors that Defendants knew the tax refunds were connected to actual people. Additionally, even though Defendants allege that they had no way of determining whether the checks were authentic or forgeries, as noted previously, inferred knowledge that federal and state agencies only issue tax refunds after a verification process is sufficient to conclude that Defendants had knowledge that the tax return was authentic and belonged to an actual person.[2]

Accordingly, the Court **DENIES** Defendants' Motions for Judgment of Acquittal as to Counts III and V of the Indictment (Doc. 55).

### c. *Mail & Wire Fraud Conspiracy (Count X)*

Defendant Jenkins was indicted and found guilty on Mail and Wire Fraud Conspiracy in violation of 18 U.S.C. §§ 1341, 1343, and 1349. The Superseding Indictment alleges that Defendant Jenkins conspired with Princess Eatmon to knowingly devise a scheme or artifice to obtain monies by fraud from the Department of Education. The Government further alleges that Defendant Jenkins and his co-conspirators caused the Department of Education to award a total of $335,693 of federal student aid to straw students, of which $139,087 was transferred to the universities

---

[2] The contrary inference is far more difficult to reach—that Defendants would repeatedly present US Treasury checks, over three hundred, without any belief that the checks were authentic.

10

involved. Defendant Jones was also indicted on this Count but was found not guilty by the jury.

In his brief in support of Rule 29 relief, Defendant Jenkins argues that the Government failed to present evidence to show that Defendant Jenkins conspired with 100 other people to obtain over $300,000 in student loans. Defendant Jenkins states that it is important to note that he was not indicted for *individually* conspiring with Princess Eatmon to commit one count of student loan fraud, rather he was indicted for conspiring with everyone. Per Defendant Jenkins, there is no evidence that he shared in the proceeds of any loan other than his own, or knew about the existence of any other conspirator or the fraud Princess Eatmon was committing for those individuals. Thus, Defendant Jenkins contends that there was a material variance between the single conspiracy charged in the indictment and the multiple conspiracies presented at trial.

The Court disagrees that Defendant Jenkins' contentions allege a variance in proof. Defendant Jenkins does not argue that he did not engage in student loan fraud, or that the Government failed to prove the essential elements of a violation of 18 U.S.C. §§ 1341, 1343, and 1349. Rather, he alleges that the proceeds he individually received from the student loan fraud do not equal the amount alleged in the indictment—the $335,693 dollars obtained from the entire straw student scheme. In this respect, the Court concludes that Defendant Jenkins's arguments are that of "a failure of proof rather than a variance." *United States v. Russo*, 796 F.2d 1443, 1457 (11th Cir. 1986). A failure of proof is described as a situation where "[t]he government did not prove a different incident from the one that it alleged, but rather it failed to prove all that it alleged." *Id.* However, "[t]he government need not prove every fact charged in the indictment as long as it proves enough of the facts charged therein to satisfy the

11

essential elements of the crime." *Id.* (internal quotations and citations omitted). The evidence that Defendant Jenkins participated in his own fraudulent student loan transaction in conspiracy with Princess Eatmon—evidence that Defendant Jenkins does not challenge—was more than sufficient to satisfy the elements of 18 U.S.C. §§ 1341, 1343, and 1349.[3] *See Russo*, 796 F.2d at 1457 (in prosecution for a violation of 18 U.S.C. § 1952 (Interstate and foreign travel or transportation in aid of racketeering enterprises), finding that it was immaterial that Government alleged that defendant transported marijuana from Chicago to Tampa and from Chicago to Pittsburgh, when the Chicago-to-Georgia transport shown by the evidence was by itself more than sufficient to satisfy the elements of section 1952). Therefore, the Court does not find the Government's proof at trial to be insufficient to sustain the elements of a conviction under 18 U.S.C. §§ 1341, 1343, and 1349.

Even if there was a material variance between the Superseding Indictment and the Government's proof at trial—that there were multiple conspiracies rather than the one single conspiracy charged—the Court does not find that this variance caused any prejudice that requires a reversal of the jury's conviction. A conviction will not be reversed "because a single conspiracy is charged in the indictment while multiple conspiracies may have been revealed at trial unless the variance is [1] material and [2] substantially prejudiced the defendant." *United States v. Richardson*, 532 F.3d 1279, 1284 (11th Cir. 2008), *cert denied*, 555 U.S. 1120 (2009). Here, although Defendant

---

[3] In *Chandler*, the case solely relied upon by Defendant Jenkins, the Eleventh Circuit found that the Government's proof at trial did not satisfy the essential elements of the crime of conspiracy—1) an agreement to achieve an unlawful objective and 2) defendants' knowing participation in that agreement. *United States v. Chandler*, 388 F.3d 796, 810-812 (2004). Here, Defendant Jenkins does not deny that there was an agreement to achieve an unlawful objective (student loan fraud) or that he knowingly participated in the conspiracy. He merely alleges that the Government's evidence fell short of proving that $335,693 should be attributed to him. Said argument is not sufficient to disturb the jury's conviction since the Government was only required to prove that Defendant Jenkins entered into an agreement to commit mail and wire fraud in violation of 18 U.S.C. § 1341, 1343, and 1349.

Jenkins argues that there exists a material variance between what was charged in the indictment and what was presented at trial, he offers no arguments in support of the prejudicial effect of any variance. Nevertheless, to show that he was substantially prejudiced by the variance, Defendant Jenkins would have to show either:

> 1) that the proof at trial differed so greatly from the charges that [he] was unfairly surprised and was unable to prepare an adequate defense; *or* 2) that there are so many defendants and separate conspiracies before the jury that there is a substantial likelihood that the jury transferred proof of one conspiracy to a defendant involved in another.

*Id.* at 1286 (citations omitted) (emphasis in original).

The Court finds that neither of these scenarios is present here. First, Defendant Jenkins has not claimed that he was unfairly surprised or was unable to prepare an adequate defense. *See, e.g., United States v. Edouard*, 485 F.3d 1324, 1348 (11th Cir. 2007) (finding no prejudice where defendant "failed to explain how "the proof at trial differed so greatly" from the conspiracy charged in the superseding indictment that he "was unfairly surprised and was unable to prepare an adequate defense"). In this respect, Defendant Jenkins appears to have failed to assess *Chandler* in its entirety. In *Chandler*, the Eleventh Circuit made clear that after a material variance is identified, "[t]he remaining question is whether the variance in the proof prejudiced the defendants." 388 F.3d at 812. Consistent with this standard, the Eleventh Circuit only reversed defendants' convictions after finding that the variance was prejudicial. Defendant Jenkins has not advanced any arguments to show that he was unfairly surprised by the proof at trial or was unable to prepare his defense. Therefore, the Court does not find that Defendant Jenkins was unfairly surprised or precluded from

13

preparing an adequate defense such that a finding of prejudice would be warranted under the first prong.[4]

Alternatively, Defendant Jenkins has not shown that there was a substantial likelihood that the jury transferred proof of one conspiracy to him despite his involvement in another conspiracy. Defendant Jenkins' sole citation to *Chandler* as the defense to his conviction on mail and wire fraud conspiracy is insufficient to demonstrate that any transference concern affected the jury's verdict. In *Chandler*, the Government charged a single conspiracy with two unlawful objects—1) to steal the game stamps (embezzlement) and 2) to redeem them by misrepresentations amounting to criminal fraud. *Chandler*, 388 F.3d at 804. Because the Government failed to present evidence at trial to connect the two objects, the proof showed that there were two conspiracies with two objects, rather than one. *Id.* at 809. This distinction was important in terms of defendants' convictions because the Government in *Chandler* failed to present any evidence to show that Defendants knew of the embezzlement, and the redemptions were only unlawful if defendants knew that the game stamps were stolen and knowingly agreed to fraudulently redeem stolen game pieces. *Id.* at 810. The Eleventh Circuit found that the defendants were only encompassed in the criminal

---

[4] Since the elements of proof for conspiracy to commit mail and wire fraud under 18 U.S.C. § 1341, 1343, and 1349, would not have varied even if, consistent with Defendant Jenkins's view, the Government charged each act of loan fraud as a separate conspiracy, it is not likely that Defendant's defense would have varied even if he was separately charged for *only* his student loan transaction with Eatmon. *United States v. Nelson*, 301 F. App'x 894, 898 (11th Cir. 2008) ("We have indicated that it is unlikely that a defense at trial would have varied if, in either event, the underlying crimes charged and the elements of proof would be identical.") Additionally, the fact that the variance affects the monetary amount involved in the conspiracy rather than the elements of the crime charged also negates any finding that Defendant Jenkins was unfairly surprised by the proof presented at trial. *United States v. Caporale*, 806 F.2d 1487, 1500 (11th Cir. 1986) (noting that defendants could not "claim unfair surprise since the variance did not alter the crime charged, the requisite elements of proof or the appropriate defenses in a significant manner"). Thus, although the Court declined to substantively address the first element of the prejudice analysis because Defendant did not advance any arguments on those bases, the Court finds it high unlikely that Defendant Jenkins was unfairly surprised by the proof at trial or that his defense would have changed.

14

conspiracy because of their separate participation with the key-man (hub) in a redemption scheme that was not by itself criminal absent any knowledge of the embezzlement conspiracy.

The aforementioned facts show that *Chandler* is vastly distinguishable from the instant case.  Here, there was ample evidence from which the jury could have inferred beyond a reasonable doubt that Defendant Jenkins was guilty of the essential elements of the conspiracy charged—1) that Defendant Jenkins entered into an agreement with Eatmon to commit mail fraud or wire fraud and 2) that Defendant Jenkins knew that the purpose of the student loan fraud scheme was to fraudulently receive monies from the Department of Education.  This is not a situation where Defendant Jenkins was not a member of the conspiracy charged in the indictment but was nonetheless "swept into the conspiratorial net."  *Id.* at 798.  The jury was privy to evidence showing that Defendant Jenkins participated in his own student loan fraud.  Therefore, the record lacks any evidence that the jury possibly transferred someone else's guilt to Defendant Jenkins.

And, finally, even if Defendant Jenkins could demonstrate prejudice for the variance, *Richardson* stands for the proposition that Defendant Jenkins' remedy would likely not be an acquittal.  *Richardson*, 532 at 1288-89.  As noted previously, the evidence at trial showed that Defendant Jenkins participated in at least one conspiracy to commit mail and wire fraud via his own fraudulent student loan transaction.  *Id.* at 1289 ("The prosecution need not prove exactly what the indictment alleges. It is sufficient for the government to prove a subset of the allegations in the indictment, as long as the allegations that are proved support a conviction for the charged offense.")  Thus, Defendant Jenkins has not shown that he is entitled to an acquittal, even if

Eatmon's fraud scheme was comprised of multiple conspiracies with multiple individuals.[5] *See id.* at 1290 n.3 (noting that even *Kotteakos v. United States*, 328 U.S. 750 (1946), "which is the source of much of the law surrounding variance in conspiracy prosecutions," does not dictate that an acquittal is automatically required "after finding a material and prejudicial variance between the indictment, which charged several defendants for a single conspiracy, and the evidence, which established multiple conspiracies"). Furthermore, the fact that Defendant Jones was found not guilty does not automatically mean that Defendant Jenkins should be found not guilty for a conspiracy to commit mail and wire fraud.

Accordingly, Defendant Jenkins's Motions for Judgment of Acquittal as to Count X of the Indictment (Doc. 55) is **DENIED.**

**SO ORDERED**, this   26th  day of June, 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**

---

[5] The Court has considered and discussed Defendant Jenkins's assertions regarding multiple conspiracies. However, the Court does not (and need not) find that the evidence established multiple conspiracies.